UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
NICOLE SCHIANO,

                              Plaintiff,                    **MEMORANDUM & ORDER**

  -against-                                              03-CV-492 (DRH) (ETB)

QUALITY PAYROLL SYSTEMS, INC.,
and MICHAEL TINTWEISS,

                              Defendants.
----------------------------------------------------------X

**A P P E A R A N C E S :**

**ZABELL & ASSOCIATES, P.C.**
Attorneys for Plaintiff
700 Lakeland Avenue
Bohemia, NY 11716
By: Saul D. Zabell, Esq.

**GOLDBERG & CONNOLLY**
Attorneys for Defendants
66 North Village Avenue
Rockville Center, New York 11570
By: Janet M. Connolly, Esq., Robert C. Buff, Esq., David E. Wolff, Esq., & Michael I. Silverstein, Esq.

**HURLEY, District Judge:**

*INTRODUCTION*

        Plaintiff Nicole Schiano filed the present Title VII and New York State Human Rights Law (NYSHRL) action against her former employer and former supervisor, respectively Defendants Quality Payroll Systems ("QPS" or "the company") and Michael Tintweiss, claiming both that they subjected her to a "hostile work environment," and that they retaliated against her for complaining about the hostile work environment. Schiano also claims "aider and abettor"

liability against Tintweiss under Section 296(6) of the NYSHRL.  The Defendants have moved, and Schiano has cross-moved, for summary judgment on all claims pursuant to Federal Rule of Civil Procedure 56.  For the reasons that follow, the Defendants' motion is granted, Schiano's motion is denied, and this case is dismissed.

*BACKGROUND*

The material facts of this case, drawn from the complaint and the parties' Local Rule 56.1 Statements, are essentially undisputed.  QPS hired Schiano in January 2001 as an "administrative assistant" in its accounting department, and promoted her to "corporate financial assistant" in June of the same year.  During Schiano's employment at QPS, her superiors included Bert Geller, the company's president; Julius Veit, the company's secretary and treasurer; and Tintweiss, the company's vice president and the head of its sales department.  Schiano apparently reported directly to Veit.  At some point during her employment at QPS, Schiano became involved in a romantic relationship with fellow employee Matthew Barbis.

The incidents that led to the present lawsuit commenced on December 14, 2001, when Schiano attended the company's holiday party in Philadelphia.  While there, and in response to a question from Tintweiss, Schiano suggested that she should receive a $100-per-week raise, to which Tintweiss responded by that she was "sleeping with the wrong employee."  During the same party, and also in the presence of other employees, Tintweiss photographed himself placing his hand on Schiano's upper thigh and pulling her skirt up about two or three inches; Schiano "pushed Tintweiss's hand away and told [him] to stop."  As Schiano and Geller were subsequently

leaving the party, Tintweiss allegedly also asked Schiano if he could accompany her to her hotel room.

Tintweiss's inappropriate conduct toward Schiano continued. Soon after the holiday party, Tintweiss repeated his comment to Schiano that she was "sleeping with the wrong employee," this time in the presence of Barbis and another QPS employee in the company lunchroom. On two other occasions, by the Defendants' own admission, Tintweiss teased Schiano in public areas of the office and/or in the presence of other employees that he should accompany her on an upcoming vacation in lieu of Barbis. On five or six other occasions, while Schiano "was seated at her desk, Tintweiss approached her from behind and placed his hands on her back, neck, or shoulders and leaned into her as she was working." In late April 2002, in the presence of five or six other employees, Tintweiss again told Schiano that she was "sleeping with the wrong employee." Additionally, Tintweiss had at least one conversation with Barbis on topics including "how 'hot' [Schiano] was" and "the type of underwear she wore," although this conversation was apparently not in Schiano's presence, and the Defendants insist that Barbis initiated it.

Schiano indicates that she made numerous verbal complaints about Tintweiss to her other superiors at QPS, and eventually "asked Veit to put up a partition around her cubicle to avoid having her work interrupted by other employees and so that she didn't have to deal with Tintweiss." After the petition was installed, Tintweiss "became visibly upset," and "would leer at Plaintiff as he walked past her cubicle." (According to the Defendants, Tintweiss was upset because he had "had a pre-existing plan to have a whole number of cubicles installed along the wall where [Schiano's] work station was located," which was apparently thwarted by Schiano's individual

partition.)

On May 2, 2002, Veit asked Schiano if he could discuss her complaints regarding Tintweiss's behavior with Geller. Veit subsequently requested that Schiano put her allegations in writing; although Schiano at first indicated a willingness to do so, she later changed her mind. On May 6, 2002, after Veit asked her on three separate occasions whether she had or would put her allegations into writing, Schiano explained that "she did not know how the complaint would be used and feared repercussions," and also refused Veit's request that she meet with Geller, "because she was feeling very intimidated and felt caught in the middle." Later that day, apparently in anger or frustration, Veit told Schiano that she would report to Geller instead of himself from that moment forward. By the following day, Veit had rescinded this change and apologized. On May 7, 2002, however, Schiano submitted a letter of resignation. According to Schiano, she was "upset because [Veit] had always been my direct supervisor," was "very upset at the comments the previous day that I was to report to another manager," and "no longer felt that I wanted to work in that environment."

Schiano filed the present action on January 30, 2003. Following completion of discovery, the parties submitted the present cross-motions for summary judgment.

*DISCUSSION*

I. *Summary Judgment: Legal Standards*

Summary judgment is generally appropriate where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994) (quoting Fed. R. Civ. P. 56(c)). The relevant governing law in each case determines which facts are material; "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *Chertkova v. Conn. Gen'l Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996) (citing Fed. R. Civ. P. 56(c)).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there *is* a genuine issue of material fact to be tried. *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). The non-movant must present more than a "scintilla of evidence," *Del. & Hudson Ry. Co. v. Consol. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252), or "some metaphysical doubt as to the material facts." *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), and cannot rely on the allegations in his or her pleadings, conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted).

The district court considering a summary judgment motion must also be "mindful of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing *Anderson*, 477 U.S. at 252), because the evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions. *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). Where the non-moving party will bear the ultimate burden of proof on an issue at trial, the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the non-movant's claim. *Id.* at 210-11.

II. *Schiano Has Failed To Establish a "Hostile Work Environment."*

Title VII makes it unlawful for an employer to discriminate against any individual with respect to the "compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." *See* 42 U.S.C. § 2000e-2(a)(1). Schiano claims that the Defendants subjected her to a hostile work environment based on her gender. An employer violates Title VII when "discrimination based on sex . . . create[s] a hostile or abusive work environment," but "not all workplace conduct that may be described as 'harassment' affects a 'term, condition, or privilege' of employment within the meaning of Title VII." *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 66-67 (1986).

A sexually hostile work environment is not actionable under Title VII unless the plaintiff can show that her workplace was "permeated with discriminatory intimidation" that was "so severe or pervasive" that a *reasonable* person would perceive it as "alter[ing] the terms and

conditions of [her] employment for the worse"; this is, as the word "reasonable" suggests, an objective standard.[1] *Richardson v. New York State Dep't of Corr. Serv.*, 180 F.3d 426, 436 (2d Cir. 1999).

"[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). The Supreme Court has made it clear that this standard is "demanding," and that "conduct must be extreme to amount to a change in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

In the present case, Schiano cannot demonstrate that her work environment was, objectively, sufficiently permeated with discriminatory intimidation severe enough to alter the conditions of her employment. Her hostile work environment claim thus must fail.

A. *The frequency of the alleged discriminatory incidents was not particularly "continuous" or "regular."*

A plaintiff alleging a hostile work environment must generally demonstrate "that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (internal quotations omitted). "As a general matter, 'isolated remarks or occasional episodes of harassment

---

[1] The plaintiff must also show that she subjectively perceived her work environment to be abusive. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993). In the present case, the parties do not dispute that Schiano has done so.

will not merit relief under Title VII; in order to be actionable, the incidents of harassment must occur in concert or with a regularity that can reasonably be termed pervasive." *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 768 (2d Cir. 1998) (internal quotations omitted).[2] Thus, a plaintiff who complains that her employer touched or grabbed her "constantly," "daily," or "whenever he had the opportunity" has alleged sufficiently frequent conduct to indicate a hostile work environment. *See Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 75 (2d Cir. 2001). By contrast, occasional teasing, sexual innuendo, and other inappropriate behavior — even including physical contact — do not amount to an alteration of the terms and conditions of the victim's employment. *See*, *e.g.*, *Adusumilli v. City of Chi.*, 164 F.3d 353, 361 (7th Cir. 1998) (allegations that supervisor and co-workers teased plaintiff, stared at her chest, attempted to make eye contact with her in flirtatious or suggestive manner, and on four occasions "briefly touched her arm, fingers, or buttocks," amount only to "isolated incidents" and were not actionable under Title VII).

In the present case, the conduct alleged by Schiano occurred intermittently over a

---

[2] In some instances, a discriminatory incident *can* create a hostile work environment — "if, by itself, it can and does work a transformation of the plaintiff's workplace." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002). But such an incident must be "extraordinarily severe." *Id.* (quoting *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000). None of the incidents alleged by Schiano even approach this "extraordinarily severe" standard. *Compare Howley v. Town of Stratford*, 217 F.3d 141, 154 (2d Cir. 2000) (single instance of obscene comments by co-worker sufficed to create hostile work environment under Title VII where comments were loud, prolonged, made in front of "a large group in which [the plaintiff] was the only female and many of the men were her subordinates,"and "included charges that [the plaintiff] had gained her office of lieutenant only by performing fellatio."); *with Quinn*, 159 F.3d at 768 (supervisor's comment to plaintiff on one occasion that "she had been voted the 'sleekest ass' in the office," and his "deliberat[e] touch[ing] [of her] breasts with some papers that he was holding in his hand" on another occasion, were inadequate to support hostile work environment claim).

five or six-month period, and was thus not particularly "frequent" under the Title VII standard. Moreover, even where harassing actions "occurred with some regularity" for a year or more, a court must also consider the other factors that indicate whether an environment is objectively "hostile." *See Shepherd v. Comptroller of Pub. Accounts of State of Tex.*, 168 F.3d 871, 874 (5th Cir. 1999) (finding co-worker's "intermittent" touching of plaintiff's arm or shoulder, stares, "boorish and offensive" comments, and otherwise inappropriate behavior insufficient to create hostile work environment, as none of alleged acts physically threatened plaintiff or "undermine[d] [her] workplace competence," and alleged acts would not "interfere unreasonably with a reasonable person's work performance"). As discussed below, even if the behavior alleged by Schiano was "frequent," it did not create an objectively hostile environment.

  B.  *The discriminatory incidents Schiano alleges were not particularly severe.*

    To establish that a defendant's misconduct was severe enough to alter the conditions of her employment, a plaintiff must allege more than "relatively innocuous incidences of overbearing or provocative behavior." *Lamar v. Nynex Serv. Co.*, 891 F. Supp 184, 185 (S.D.N.Y. 1995) (finding that touching plaintiff's hand, comments that she looked "hot," and staring at her were too mild to constitute sexual harassment). "Simple teasing" or "offhand comments" do not amount to discriminatory changes in the terms and conditions of employment. *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 75 (2d Cir. 2001). Similarly, occasional threats or insinuations that employment benefits will be granted or denied based on sexual favors do not suffice to create a hostile work environment. *See Mormol v. Costco Wholesale Corp.*, 364 F.3d 54, 55, 58-59 (2d.Cir. 2004) (affirming summary judgment for defendant despite plaintiff's

claims that supervisor explicitly told her "that he would not approve a vacation request she had made if she did not have sex with him," and "that she would be paid for hours that she was not at work" in return for having sex with him); *and compare Raniola v. Bratton*, 243 F.3d 610, 621 (2d Cir. 2001) (reversing summary judgment for defendant where plaintiff endured "offensive sex-based remarks, disproportionately burdensome work assignments, workplace sabotage and one serious public threat of physical harm" by her supervisor).

In light of the above standard, the behavior to which Schiano was subjected (occasional touching, rude comments, and hostile stares) cannot be said to amount to more than "relatively innocuous incidences of overbearing or provocative behavior." As such, they do not reach the requisite level of employment-altering severity.

C. *Tintweiss did not threaten or "humiliate" Schiano.*

A common additional inquiry in hostile environment claims — to the extent that it differs at all from the "severity" inquiry discussed above — is whether the alleged discriminatory conduct was physically threatening or humiliating, or merely offensive. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). Schiano does not even suggest that Tintweiss physically threatened her, and she fails to allege facts indicating that Tintweiss "humiliated" her under the applicable legal standard.[3]

---

[3] Schiano's complaint alleges that she "has suffered and continues to suffer severe and lasting embarrassment, humiliation and anguish," and her memorandum of law similarly states that "Tintweiss's comments and conduct were . . . humiliating to Plaintiff." But the humiliation inquiry is objective, not subjective. *See Gurry v. Merck & Co., Inc.*, No. 01 Civ. 5659, 2003 WL 1878414, at *4 (S.D.N.Y. Apr. 14, 2003). Schiano may well have felt *subjectively* humiliated by Tintweiss, but she fails to indicate how his behavior was *objectively* humiliating under Title VII's strict standards. As noted in Part I, *supra*,

To establish "humiliation," a plaintiff must show more than that she was "simply embarrassed on a handful of occasions." *Alfano v. Costello*, 294 F.3d 365, 381 (2d Cir. 2002). *See also Chrouser v. DePaul Univ.*, No. 95 Civ. 7363, 1998 WL 299426, at *2-3 (N.D. Ill. May 20, 1998) (co-worker's public comments to plaintiff that she had previously noticed her "wearing a dress unbuttoned to her [stomach] and cut up to her 'snatch' " held not humiliating). *Compare Brissette v. Franklin County, Sheriff's Office*, 235 F. Supp.2d 63, 78, 93 (D. Mass. 2003) (retaliatory acts against plaintiff, female corrections officer with seven years' experience who had complained of sexual harassment, included sending her back to training academy where she "was required to run around the track, despite her muscular dystrophy, and was thereafter disqualified from the remainder of the course").

Schiano argues, unconvincingly, that she suffered humiliating verbal abuse similar to that faced by the plaintiff in *Howley v. Town of Stratford*, 217 F.3d 141 (2d. Cir. 2000). In *Howley*, the plaintiff was a female firefighter subjected to extremely profane, sexually explicit, and degrading insults, delivered by a subordinate in front of other subordinates. *Id.* at 148. These remarks included comments about her menstrual cycle, as well as a charge that she was denied a promotion based on her inadequacies at performing fellatio. (Additionally, Howley alleged that her co-worker had made false statements undermining her authority with other subordinates, had "creat[ed] safety hazards" for her, had refused to acknowledge that she outranked him, and had indicated that at a fire scene he would not obey her orders. *Id.* at 149.) *Howley* is thus readily

---

Schiano cannot defeat summary judgment merely on the basis of her own conclusory statements.

distinguishable from this case, and Schiano points to no case where behavior similar to that which she experienced was deemed "humiliating."

  D. *Tintweiss's conduct did not unreasonably interfere with Schiano's job performance.*

  The final factor generally considered in hostile work environment claims is whether the alleged discriminatory conduct altered the plaintiff's working conditions in such a way that it "subvert[ed] [her] ability to function in the workplace." *Alfano*, 294 F.3d at 380. This can occur where the plaintiff's authority or her co-workers' confidence in her is undermined, *see*, *e.g.*, *Howley*, 217 F.3d at 154-55, or more simply, where the plaintiff finds performing her daily tasks to be unbearable. *See*, *e.g.*, *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 76 (2d Cir. 2001). Schiano does not claim that she was unable to complete her work tasks or that Tintweiss's behavior interfered with her performance of job responsibilities. In fact, her complaint states that "[t]hroughout the term of her employment with QPS, Plaintiff performed the essential functions of her position in a satisfactory manner" or "consistently exceeded the requirements of her position." This factor thus weighs against Schiano as well.

  E. *Summary: Schiano has failed to indicate an objectively hostile work environment.*

  After evaluating all of the factors and viewing the circumstances in their totality, Schiano's allegations fail to indicate that she suffered a hostile work environment. While Tintweiss's behavior toward Schiano was, on occasion, undeniably porcine, it did not alter the terms and conditions of her employment, and thus did not rise to the Title VII's "demanding"

hostile work environment standard. *See Holtz*, 258 F.3d at 75 ("boorish and inappropriate" behavior is not always actionable sexual harassment). Schiano's hostile work environment claim thus fails as a matter of law.

III.   *Schiano's Retaliation Claim Must Fail.*

Schiano also alleges that QPS retaliated against her for complaining of Tintweiss's lewd conduct. To establish a prima facie case of retaliation under Title VII, an employee must show: (A) her "participation in protected activity known to the defendant"; (B) a subsequent employment action taken by the defendant and disadvantaging her; and (C) a causal connection between the protected activity and the adverse employment action. *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d. Cir. 2000). Because Schiano fails to allege any actual adverse employment action taken by QPS, she fails to establish a prima facie case of retaliation.

A.   *Schiano Participated in A Protected Activity of Which QPS Was Aware.*

QPS does not seriously dispute that Schiano engaged in a protected activity of which it was aware, nor could it. A "protected activity" is an "action taken to protest or oppose statutorily prohibited discrimination." *Cruz*, 202 F.3d at 566. This can include "complaining about a co-worker's allegedly unlawful conduct — by complaining to an officer of the company." *Reed v. A.W. Lawrence & Co., Inc.*, 95 F.3d 1170, 1178 (2d Cir. 1996).

While this Court has already determined that the underlying employment practices of which Schiano complained are not actionable under Title VII (*see* Part II, *supra*), "an employee 'need not establish that the conduct [s]he opposed was in fact a violation of Title VII,' but rather,

only that she had a 'good faith, reasonable belief' that the underlying employment practice was unlawful." *Reed*, 95 F.3d at 1178 (quoting *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988)).

In this case it seems reasonably certain that Schiano had a good faith belief that Tintweiss's conduct was unlawfully discriminatory, and it is undisputed that she complained about it to her superiors at QPS. While QPS suggests that Schiano did not participate in a protected activity because she chose not to write a formal letter of complaint as requested, "the law is clear that opposition to a Title VII violation need not rise to the level of a formal complaint in order to receive statutory protection." *Cruz*, 202 F.3d at 566. Therefore, Schiano's oral complaints to her supervisors are sufficient to establish that she engaged in a protected activity of which QPS was aware.

  B. *The Change in Schiano's Reporting Structure Does Not Constitute An Adverse Employment Action.*

In the discriminatory retaliation context, an "adverse employment action" connotes a "materially adverse change in the terms and conditions of employment." *Richardson v. New York State Dep't of Corr. Serv.*, 180 F.3d 426, 446 (2d Cir. 1999). Schiano argues that Veit's order that she report to Geller instead of himself constituted just such an materially adverse change. Schiano is wrong.

"Materially adverse" employment actions can include "a demotion evidenced by a decrease in wage or salary, a less distinguished title, . . . or other indices . . . unique to a particular situation." *Feingold v. N.Y.*, 366 F.3d 138, 152 (2d Cir. 2004) (internal quotations omitted). But

"a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities" or a "minor, ministerial stumbling block" in order to be "materially adverse." *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (internal quotation omitted). And "the employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances." *Murphy v. Board of Educ. of Rochester City Sch. Dist.*, 273 F. Supp.2d 292, 304 (W.D.N.Y. 2003) (quoting *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001)).

A mere change in supervisors or reporting structure, unaccompanied by evidence of a " 'substantive change' or of an increase in [the plaintiff's] workload" or some other significant effect upon the terms or conditions of her employment, is not "materially adverse" — even if it is retaliatory. *See Taylor v. Small*, 350 F.3d 1286, 1295-96 (D.C. Cir. 2003). *See also Flaherty v. Gas Research Inst.*, 31 F.3d 451, 457 (7th Cir. 1994) (changes in title and supervisor are "largely semantic where the employee's salary, benefits, and level of responsibility would remain unchanged").

In the present case, Schiano argues that her changed reporting structure "clearly affected the terms, privileges, and conditions of [her] employment," and "substantially changed her job." As noted in Part I, *supra*, a plaintiff cannot defeat (or support) a summary judgment motion by relying on the allegations in her pleadings or on merely conclusory statements. *See Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996). Schiano's submissions do not explain how, much less offer evidence to prove that, the change in the supervisor to whom she reported

constituted a materially adverse employment action under the above standards.[4]

Not only was the decision to alter Schiano's reporting structure not materially adverse, it was immediately rescinded and never even put into effect. For this reason as well, Veit's decision cannot constitute an adverse employment action. *See*, *e.g.*, *Rooney v. Witco Corp.*, 722 F. Supp 1040, 1046-47 (S.D.N.Y. 1989) (five-day suspension of plaintiff's benefits, later rescinded, is not adverse employment action). Since the change in Schiano's reporting structure was not materially adverse, and was at any rate immediately rescinded, Schiano has failed to establish the necessary "adverse employment action" to support her retaliation claims.

IV. *Schiano's State Law Claims Must Fail.*

As previously noted, Schiano's complaint alleges causes of action under the New York State Human Rights Law for sex discrimination, retaliation, and aiding and abetting sex discrimination and/or retaliation. The first two of these claims are indistinguishable from

---

[4] Schiano also suggests, likewise without explanation or evidence, that her changed reporting structure constituted a "constructive discharge" from her job. The constructive discharge of an employee occurs when her employer, rather than directly discharging her, intentionally creates an intolerable work atmosphere that forces her to quit. *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 89 (2d Cir. 1996). To be "intolerable," however, the employee's working conditions must be so difficult or unpleasant that a reasonable person in the employee's shoes would feel compelled to resign. *Id.* "Having a new supervisor brought in, without more, clearly does not rise to the level of intolerability required to sustain a constructive discharge claim." *Int'l Bus. Mach. Corp. v. Martson*, 37 F. Supp.2d 613, 620 (S.D.N.Y. 1999). Neither does a change in job responsibilities. *See Pena v. Brattleboro Retreat*, 702 F.2d 322, 325 (2d Cir. 1983). In fact, even an employee's "resignation due to lower pay resulting from sex discrimination" or "unfavorable job assignment and discriminatory failure to promote" do not constitute constructive discharge. *Martin v. Citibank, N.A.*, 762 F.2d 212, 221 (2d Cir. 1985) (citations omitted). In sum, Schiano's suggestion that the temporary change in her reporting structure amounted to a constructive discharge sufficient to constitute a "material adverse employment action" is meritless.

Schiano's Title VII claims and need not be separately analyzed. The third claim fails as a matter of law.

Discrimination and retaliation "claims under the NYSHRL are analyzed identically to claims under . . . Title VII," and "the outcome of an employment discrimination claim made pursuant to the NYSHRL is the same as it is under . . . Title VII." *Smith v. Xerox Corp.*, 196 F.3d 358, 363 n.1 (2d Cir. 1999). Thus, NYHRL claims are generally considered "in tandem" with Title VII claims, *see Leopold v. Baccarat, Inc.*, 174 F.3d 261, 264 n.1 (2d Cir. 1999), and a district court need not explicitly evaluate a plaintiff's NYSHRL claims where it has thoroughly analyzed the plaintiff's Title VII claims. *Smith*, 196 F.3d at 363 n.1. In the present case, as Schiano has failed to state either a hostile work environment claim or a retaliation claim under Title VII (*see* Parts II and III, *supra*), she has ipso facto failed to state a hostile work environment or retaliation claim under NYSHRL as well.

There is one notable difference between Title VII and its New York counterpart: unlike Title VII, NYSHRL allows the imposition of liability on individual employees under the aider and abettor provision of its Section 296(6). *See Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995). Nevertheless, under New York law a plaintiff must first establish an employer's liability before liability can be found as to an alleged aider and abettor; thus where a court determines that there is no genuine issue of material fact with respect to the defendant's liability for the sexual harassment allegedly caused by its employee, the plaintiff cannot prevail on her state law claim against that employee. *Duviella v. Counseling Serv. of E. Dist. of N.Y.*, No. 00 Civ. 2424, 2001 WL 1776158, at *18 (E.D.N.Y. Nov. 20, 2001) (internal citations omitted). Since

Schiano has failed to show that QPS can be liable under either New York or federal law, there is no basis for imputing aider and abettor liability to Tintweiss.

## *CONCLUSION*

For all of the above reasons, the Defendants' motion for summary judgment is GRANTED, Schiano's cross-motion for summary judgment is DENIED, and this case is accordingly DISMISSED in its entirety. The Clerk of Court is directed to CLOSE this case.

**SO ORDERED.**

Dated: Central Islip, New York  /s/
July 12, 2005  Denis R. Hurley
United States District Judge